**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| RICHARD OZMENT | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:21-CV-9 SNLJ |
| | ) | |
| KILOLO KIJAKAZI, [1] | ) | |
| Commissioner of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

The Commissioner of the Social Security Administration denied plaintiff Richard

Ozment's application for Disability Insurance Benefits under Title II of the Social Security

Act.  Plaintiff now seeks judicial review, alleging that the Administrative Law Judge's

("ALJ") decision was not supported by substantial evidence.  The Commissioner filed a

response memorandum, but the plaintiff did not file a reply, and the time for doing so has

now passed.  As discussed below, the ALJ's decision is supported by substantial evidence

on the record as a whole and is affirmed.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021.
Under Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted
for Andrew Saul as the defendant in this suit.

## I.      Procedural History

Plaintiff was born in 1964.  Plaintiff filed an application for Disability Insurance Benefits on April 8, 2019, alleging an onset of disability of March 21, 2019.  His claim was disapproved, and plaintiff requested a hearing by an ALJ.  The ALJ issued an unfavorable decision on April 24, 2020.  Plaintiff filed for review by the Appeals Council, and the Appeals Council denied plaintiff's request for review.  Thus, the ALJ's decision is the final decision of the Commissioner.  Plaintiff now seeks judicial review.

## II.     Disability Determination—Five Steps

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A); *id.* § 1382c(a)(3)(A).  A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." *Id.* § 423(d)(2)(A); *id.* § 1382c(a)(3)(B).

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability.   20 C.F.R.  §§  404.1520(a), 416.920(a).   First, the Commissioner considers the claimant's work activity.  If the claimant is engaged in substantial gainful activity, the claimant is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

2

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003); *see also* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities."  *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(c), 404.1520a(d), 416.920(c), 416.920a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity.  If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled and eligible for benefits—regardless of age, education, and work experience.  20 C.F.R. §§ 404.1520(a)(4)(iii), (d); 416.920(a)(3)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" ("RFC") to perform any past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(5)(i), 416.920(a)(4)(iv), 416.945(a)(5)(i).  An RFC is "defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations."  *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (cleaned up); *see also* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others,

3

and an individual's own description of his limitations," an RFC is nonetheless an "administrative assessment"—not a medical assessment—and, therefore, "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016).  Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion."  *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).  Ultimately, the claimant is responsible for providing evidence relating to the RFC and the Commissioner is responsible for developing the claimant's "complete medical history. . . ." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).  The claimant is not disabled if the ALJ determines that the claimant retains the RFC to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production shifts to the Commissioner to show the claimant maintains the RFC to perform work that exists in significant numbers in the national economy.  *See Bladow v. Apfel*, 205 F.3d 356, 358–59 n.5 (8th Cir. 2000); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, the Commissioner will find the claimant not disabled.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)( v).  If the claimant cannot make an adjustment to other work, the Commissioner will find the claimant disabled.  *Id.*  At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant.  *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

4

III.    **The ALJ's Decision**

At Step One, the ALJ found that plaintiff met the insured status requirements through June 30, 2024 and that he had not engaged in substantial gainful activity since March 21, 2019.  At Step Two, the ALJ found that plaintiff suffers from two severe impairments: (1) lumbar degenerative disc disease, and (2) residuals of left wrist fusion.  At Step 3, the ALJ found plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  At Step 4, the ALJ found that plaintiff had the RFC to:

> Perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant cannot climb ladders, ropes, or scaffolds, and can occasionally climb stairs and ramps.  The claimant can occasionally stoop, kneel, crouch, and crawl.  The claimant can *frequently* handle and finger with the left hand and wrist.

[Tr. 30] (emphasis added).

"Handling" involves "seizing, holding, grasping, turning or otherwise working primarily with the whole hand or hands."  Soc. Sec. Ruling 85-15.  Meanwhile, "fingering" "involves picking, pinching, or otherwise working primarily with the fingers."  *Id.*

The ALJ stated he "considered all symptoms" and the extent those symptoms were consistent with objective medical evidence.  [Tr. 29].  The ALJ summarized plaintiff's hearing testimony but found that the medical evidence "fail[ed] to provide strong support" for plaintiff's symptoms.  [Tr. 30, 30–34].  After considering the factors listed in 20 C.F.R. §§ 404.1529 and 416.929, the ALJ determined that the medically determinable impairments could cause some of plaintiff's alleged symptoms, but that "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are

not entirely consistent with the medical evidence and other evidence in the record. . . ." [Tr. 34]. Notably, the ALJ found that plaintiff's testimony of limiting deficits in his left wrist were "dramatically inconsistent" with plaintiff's activities of riding his motorcycle on several occasions, doing household chores, and doing heavy lifting. [Tr. 34–35]. Consequently, the ALJ determined that plaintiff was not disabled at any time from March 21, 2019, through the date of his decision. [Tr. 36].

With this RFC, and relying in part on the vocational expert's testimony, the ALJ found that plaintiff was able to perform his past relevant work as a retail clerk. [Tr. 35–36, 122–23]. The vocational expert testified that if plaintiff was limited to *occasionally* handling and *frequently* fingering objects, then the RFC would eliminate even the job of retail clerk. [Tr. 123–24]. Thus, the ALJ concluded that plaintiff is not disabled.

## IV. Standard of Review

The Court must affirm the ALJ's decision if it is supported by substantial evidence on the whole record. 42 U.S.C. §§ 405(g); 1383(c)(3). Substantial evidence is less than a preponderance of the evidence but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the [Commissioner's] findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (alteration in original) (*quoting Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir. 1987)). The Court must also consider any evidence that fairly detracts from the ALJ's decision. *Id.* "[I]f there is substantial evidence on the record as a whole, [the Court] must affirm the administrative decision, even if the record could also have supported an opposite

6

decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992); *see also Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015) (citing cases).  In reviewing whether the ALJ's decision was supported by substantial evidence, this Court does not substitute its own judgment for that of the ALJ—even if different conclusions could be drawn from the evidence, and even if this Court may have reached a different outcome.  *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010).  "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) (citing *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001)).[2]

## V.    Discussion

Plaintiff makes two challenges to the ALJ's decision.  Both challenges center on the ALJ's calculation of plaintiff's RFC. First, plaintiff claims that the ALJ improperly discredited "all of his testimony" regarding his reported level of pain and that the ALJ failed to consider the *Polaski* factors: specifically, plaintiff's "work history, his daily activities, or precipitating and aggravating factors."  [Doc. 23, at 7] (citing *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984)).  Second, plaintiff contends that the ALJ's RFC

---

[2] This Court cautions against the Commissioner's framing of the "substantial evidence" standard as requiring "*only* 'more than a mere scintilla' of evidence," to sustain the ALJ's findings.  [Doc. 28, at 2] (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1157 (2019)) (emphasis added).  This framing misstates the law. Substantial evidence requires *more* than a mere scintilla.  Instead, substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek*, 139 S. Ct. at 1148 (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

finding—that plaintiff could both frequently handle and finger objects—was inconsistent with the prior administrative medical findings of the state medical consultant, Dr. Manuel Salinas. [Doc. 23, at 9].[3] Dr. Salinas made a finding that plaintiff was limited to *occasional* handlings and *frequent* fingering. [Tr. 134]. Plaintiff claims that the ALJ impermissibly substituted his own medical opinion for Dr. Salinas's medical opinion, and that the ALJ should have adopted Dr. Salinas's findings that plaintiff was limited to occasional handling and frequent fingering. [Doc. 23, at 10] (citing *Dixon v. Barnhart*, 324 F.3d 997 (8th Cir. 2003)).

### A.     The ALJ's Support for Plaintiff's RFC

Plaintiff's main thrust on his first point is that the ALJ erred by completely and improperly disregarded plaintiff's complaints about his own pain level. According to plaintiff, his medical records support his testimony that he has trouble standing and walking and that he has no grip strength in his left hand. [Doc. 23, at 5; Tr. 106–07].

"[A]n ALJ cannot reject a social security claimant's subjective complaints of pain solely because they are not fully supported by objective medical evidence." *Perkins v. Astrue*, 648 F.3d 892, 900 (8th Cir. 2011) (citing *Polaski*, 739 F.2d at 1322). When scrutinizing a plaintiff's subjective complaints of pain, an ALJ must also examine "prior

---

[3] Plaintiff bemoans that the ALJ mistakenly—or even intentionally—flip-flopped Dr. Salinas's recommendations: that the ALJ concluded that plaintiff is limited to "frequent handling and occasional fingering, the opposite of Dr. Salina's [sic] findings." [Doc. 23, at 9]. This claim is erroneous and wholly unsupported by the record. The ALJ made a finding that plaintiff was capable of "frequent handling/fingering" with the left wrist. [Tr. 35]. Nowhere does the ALJ state that plaintiff can frequently handle but only occasionally finger. Parties should read the record carefully and provide corresponding record citations for their arguments.

work history; daily activities; duration, frequency, and intensity of pain; dosage, effectiveness and side effects of medication; precipitating and aggravating factors; and functional restrictions." *Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998) (listing the *Polaski* factors). If an ALJ "discuss[es] the facts relevant to a proper inquiry into each of the factors," then there is no need to go through a step-by-step factor analysis. *Perkins*, 648 F.3d at 900; *see also Milam v. Colvin*, 794 F.3d 978, 984 (8th Cir. 2015). "The ALJ may discount complaints of pain if they are inconsistent with the evidence as a whole. If the ALJ discredits a claimant's credibility and gives a good reason for doing so, we will defer to its judgment even if every factor is not discussed in depth." *Perkins*, 648 F.3d at 900 (case citations and quotation marks omitted).

To start, the ALJ did not "completely discredit" plaintiff's reports of pain, as plaintiff asserts. Indeed, the ALJ agreed that "the evidence supports a finding that the claimant experiences some pain and discomfort." [Tr. 33]. The issue, as the ALJ described, is one of degree: whether the plaintiff's self-described pain and functional limitations "constitutes a disabling condition." [Tr. 33]; *see also Perkins*, 648 F.3d at 901 ("As is true in many disability cases, there is no doubt that the claimant is experiencing pain; the real issue is how severe that pain is.") (cleaned up). The ALJ determined that the objective medical evidence did not support plaintiff's complaints of pain. The ALJ recognized that imaging showed degenerative change in plaintiff's lumbar spine that limited plaintiff to a reduced range of light work. [Tr. 34, 302, 307, 354]. But orthopedic examinations since August 2018 showed normal gait and coordination, [Tr. 29, 34, 343, 361, 365, 368, 371, 375], and medical evidence showed plaintiff had full motion and

9

improving grip strength in his left-wrist [Tr. 32, 437].  The ALJ found no evidence of complaints of or treatment for back pain, even after plaintiff was in a car accident.  [Tr. 34, 339].  Thus, the ALJ supported his RFC with objective medical evidence and incorporated plaintiff's reported complaints of pain in limiting plaintiff to light exertional work.

The ALF had reason to doubt plaintiff's claims of total disability based on evidence in the record.  The ALJ pointed to evidence that indicated plaintiff's reported activities were inconsistent with his claims that he could not use his left hand.  Less than two months after plaintiff's April 2019 wrist surgery, plaintiff admitted to a physician assistant that he was riding his motorcycle and performing housework in non-compliance with his postoperative precautions, [Tr. 34–35, 379–80], which contradicts plaintiff's own testimony that he was complying with the precautions.  [Tr. 111].  Despite plaintiff's claim that his noncompliance was a "one time mistake," [Doc. 23, at 6], plaintiff repeatedly hopped back in the saddle.  Plaintiff reported getting a sunburn from his time riding his motorcycle in June 2019.  [Tr. 383–84].  Additionally, plaintiff apparently "met" his occupational therapy stated goal of "improved ability to operate his motorcycle with his left hand."  [Tr. 35, 441] (dated July 23, 2019).  The ALJ assessed plaintiff's activities as "dramatically inconsistent" with plaintiff's testimony.  [Tr. 35].  "[A]n ALJ may disbelieve a claimant's subjective reports of pain because of inherent inconsistencies or other circumstances." *Eichelberger v. Barnhart*, 390 F.3d 584, 589 (8th Cir. 2004).  The ALJ evaluated that plaintiff's inconsistent behavior, coupled with the medical evidence, warranted an RFC allowing for light exertional work.  [Tr. 35].

The record also shows the ALJ considered the *Polaski* factors.  The ALJ referred to the listed the factors of 20 C.F.R. §§ 404.1529 and 416.929, which practically mirror the *Polaski* factors.  *Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007).  Specifically, the ALJ addressed plaintiff's back issues, *see* [Doc. 23, at 3], noting:

> Inconsistent with the claimant's allegations of disabling back pain symptoms, there was no evidence of treatment for back pain complaints during the period under consideration. Significantly, the claimant denied back pain following a motor vehicle accident in January 2019. Moreover, orthopedic examinations since August 2018 showed normal gait and coordination. Similarly, the consultative examiner noted normal lumbar spine range of motion with intact neurological functioning, including normal strength in the upper and lower extremities.

[Tr. 34] (citations to exhibits omitted).

Likewise, the ALJ felt that plaintiff's left-wrist complaints were inconsistent with other evidence.  [Tr. 34–35].  Throughout his analysis—and as discussed below— the ALJ relied on the medical evidence, records, and findings of three doctors: Dr. Manuel Salinas, Dr. Amanda Pleimann, and Dr. Andrew Trueblood. [Tr. 33, 35].  In particular, the ALJ found Dr. Salinas's findings persuasive and consistent with other medical evidence, relying on his findings in determining plaintiff's RFC.  [Tr. 35, 133–36, 145–47].  Finally, in accordance with the *Polaski* factor, the ALJ found that plaintiff's allegations of disabling pain were inconsistent with his denial of taking any pain medications.  [Tr. 32].

As discussed, the ALJ need not delve deeply into every *Polaski* factor, so long as the ALJ references the facts supporting each factor.  *Perkins*, 648 F.3d at 900.  Plaintiff claims that the ALJ did not discuss plaintiff's prior work history, [Doc. 23, at 7], but the record plainly contradicts this assertion.  The ALJ discussed plaintiff's prior work history

11

as a retail clerk, along with his hours, duties, and pay for that job. [Tr. 35–36]. The ALJ also noted that this position does not require the performance of work-related activities precluded by plaintiff's RFC, [Tr. 35], unlike plaintiff's prior jobs as an oil change technician, mechanic, and factory laborer, which are precluded by plaintiff's RFC [Tr. 101–05, 122–23]. Plaintiff also claims that the ALJ failed to discuss plaintiff's daily activities, [Doc. 23, at 7], but the record does not support this claim. The ALJ addressed plaintiff's daily activities and how that factored into his RFC determination. [Tr. 30, 34–35].

Plaintiff provides a different interpretation of the evidence, arguing that his interpretation should prevail over the ALJ's. Plaintiff reasons that "doing well" after surgery does not show that plaintiff can perform exertional work, that plaintiff could not functionally use his left hand, and that plaintiff's back pain is "clearly documented." [Doc. 23, at 6–8]. But as the ALJ concluded, plaintiff's reported pain levels are not self-evident from a well-documented medical history merely because plaintiff's medical history is well-documented. This court cannot reverse the ALJ simply because evidence in the record could support a different conclusion. *Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014). The ALJ addressed plaintiff's testimony and the objective medical evidence and arrived at an RFC based on substantial evidence. The Court will not now disturb the ALJ's findings.

### B.    The ALJ's Reliance on Dr. Salinas's Findings

Plaintiff next argues that the ALJ—by adopting much of Dr. Salinas's findings—should also have adopted Dr. Salinas's findings that plaintiff could only occasionally handle objects instead of finding that he could frequently handle them. [Doc. 23, at 10].

12

Plaintiff argues that the ALJ failed to adequately explain why he departed from Dr. Salinas's findings. *Id.* (citing *Dixon*, 324 F.3d 997); [Tr. 134].

On the contrary, the ALJ thoroughly explained his conclusion that plaintiff could frequently handle objects.  He relied on the findings of Dr. Trueblood that plaintiff could return "to full duty status without any restrictions."  [Tr. 33, 376, 445].  The ALJ also found that Dr. Pleimann's physical examinations partially persuasive that plaintiff "had only mild difficulty with fine and gross finger movement."  [Tr. 33, 393–99].  The ALJ found that the medical evidence supported Dr. Trueblood's statements: Dr. Trueblood noted that plaintiff was in no acute distress and could use all his fingers, [Tr. 33, 443], and that plaintiff did not require any follow-up because he was doing well after surgery.  [Tr. 33, 443].  Indeed, the ALJ considered plaintiff *more* limited than did Dr. Trueblood, noting that plaintiff's consultative examination revealed that plaintiff had decreased grip strength with his left hand, and the ALJ included that left hand limitation in the RFC.  [Tr. 33, 397, 436].

The ALJ also relied on Dr. Pleimann's assessment, finding that—even though plaintiff did have left-hand difficulty—plaintiff still had functional use of his upper extremities.  [Tr. 33, 397–98].  The ALJ noted Dr. Pleimann's findings that plaintiff had normal strength throughout the upper and lower extremities.  [Tr. 33, 397–398].  The ALJ recognized that plaintiff had decreased grip strength, but that plaintiff reported normal functional use of his left wrist and no pain.  [Tr. 33, 435–36].  The ALJ noted Dr. Pleimann's observations that plaintiff could button his shirt, pick up a pen and fill out paperwork, and handle personal belongings with only mild difficulty. [Tr. 32–33, 393–

401]. The ALJ considered Dr. Salinas's findings and found them largely persuasive, accepting Dr. Salinas's findings that plaintiff could perform light exertional work that included occasional stooping, occasional handling, and frequent fingering. [Tr. 35, 133–36, 145–47]. The ALJ concluded that Dr. Salinas's findings were consistent with other evidence, which indicated plaintiff had functional use of his left hand. [Tr. 35, 436, 439, 442].

Plaintiff maintains that there is evidence in the record to support a finding that plaintiff should be—consistent with Dr. Salinas's recommendations—limited to occasional handling. [Doc. 23, at 10]. That may well be a possible interpretation of all the evidence. But "if there is substantial evidence on the record as a whole, [the Court] must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert*, 977 F.2d at 1252. Even if some evidence tends to support a limitation of occasional handling, this Court must affirm the ALJ's decision if it is based on substantial evidence. *See Goff*, 421 F.3d at 789 ("If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision.").

Plaintiff cites *Dixon v. Barnhart* for the proposition that an ALJ must rely on the opinions of treating sources. [Doc. 23, a 10]. Plaintiff's reliance on *Dixon* is misplaced. In *Dixon*, the ALJ concluded that plaintiff was not disabled by improperly focusing on one medical test while ignoring other medical evidence. 324 F.3d at 1002. The error, therefore, was that the ALJ failed to properly explain his reasoning and to fully develop the record. *Id.* ("Absent that [other] information, it is not possible to ascertain Dixon's ability to work

without engaging in medical conjecture."). *Dixon's* holding is not as sweeping as plaintiff's claim it to be. Indeed, an ALJ has a duty to draw his own inferences from medical reports and need not adopt a physician's entire medical opinion, even if that opinion is given great weight. *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011); 20 C.F.R. §§ 404.1520c(a). But in drawing his own inferences, an ALJ must rely on all medical evidence and a fully developed record. The ALJ cannot arbitrarily accept some medical evidence while rejecting other evidence without justification. *See Dixon*, 324 F.3d at 1002. "Even though the RFC assessment draws from medical sources for support, it is ultimately an *administrative determination reserved to the Commissioner*." *Cox v. Astrue*, 495 F.3d 614, 619–20 (8th Cir. 2007) (emphasis added); 20 C.F.R. § 416.927(d)-(e).

Contrary to plaintiff's argument that the medical examiner's findings should be given great weight or adopted entirely, *Dixon* cautions against an ALJ relying too much on a medical consultant's RFC conclusions without discussing other evidence in the record. 324 F.3d at 1002 (citing *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000)) ("[R]elying upon non-examining, non-treating physicians to form an opinion on a claimant's RFC does not satisfy the ALJ's duty to fully and fairly develop the record."). As discussed, the ALJ has provided sufficient support for his findings and explained why he departed from the findings of Dr. Salinas. In this case, "the ALJ exhaustively reviewed the record medical evidence and made factual findings regarding this evidence." *Martise*, 641 F.3d at 927.

## VI.   Conclusion

This Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and supported by substantial evidence. The Court does not

substitute its own judgment for that of the ALJ.  *McNamara*, 590 F.3d at 610.  Having found that the ALJ's conclusions are supported by substantial evidence and that the appropriate legal standards were correctly applied, this Court affirms the ALJ's decision.

Accordingly,

**IT IS HEREBY ORDERED** that the Commissioner's decision is AFFIRMED and plaintiff's complaint [Doc. 1] is DISMISSED with prejudice.  A separate judgment will accompany this Order.

Dated this 23rd day of August, 2022.

_____
STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE

16